UNITED STATES DISTRICT COURT

Northern District of California

GAIL MORGADO,

          Plaintiff,

   v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA; KATIE SOLINGER; and DOES 1 through 50, inclusive,

          Defendants.

No. C 13-1318 MEJ

**ORDER RE: MOTION TO DISMISS (Docket No. 13)**

## I. INTRODUCTION

Plaintiff Gail Morgado brings this retaliation case under the Fair Labor Standards Act ("FLSA") related to her termination as a General Manager of several dining facilities at the University of California, Berkeley ("UCB") in 2011. Plaintiff also asserts claims for due process violations pursuant to 42 U.S.C. § 1983 and for violations of the California Constitution. Currently pending before the Court is Defendants Regents of the University of California ("Regents") and Katie Solinger's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Court finds this motion suitable for disposition without oral argument and VACATES the June 6, 2013 hearing. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court DENIES Defendants' motion for the reasons set forth below.

## II. BACKGROUND

The following facts from Plaintiff's First Amended Complaint ("FAC"), are taken as true for purposes of this Motion. Plaintiff worked at UCB, first as a food services employee and eventually as a General Manager, from January 21, 1988 until her termination on February 18, 2011. FAC ¶¶

11, 23, Dkt. No. 11.  In approximately 2007, the Regents implemented a program in its dining locations known as the "Secret Shopper Program."  *Id.* ¶ 12.  As part of this program, employees and students at UCB visited dining locations as "Secret Shoppers" and then completed an evaluation form, providing an assessment and critique of the food quality and service.  *Id.*  The managers of these dining locations, including Plaintiff, would then review the forms to determine how to better serve the student and employee population.  *Id.*  In return, Secret Shoppers received 10 points on their meal plan.  *Id.*

Plaintiff's daughter, who was a full-time employee at UCB, agreed to be part of the Secret Shopper Program.  *Id.* ¶ 13.  Because of concerns about a potential conflict of interest, Plaintiff went to her manager at the time, Brian Bigelow, the Assistant Director of Campus Restaurants, to determine if her daughter could participate.  *Id.*  Mr. Bigelow indicated no concerns to Plaintiff and fully authorized her participation.  *Id.*  In mid-2009, Defendant Katie Solinger replaced Mr. Bigelow in the Assistant Director position.  *Id.* ¶ 15.  Solinger was aware that Plaintiff's daughter was a participant in the program and approved reimbursements for her participation.  *Id.* ¶ 14.

Plaintiff alleges that the working relationship between her and Solinger became increasingly hostile.  *Id.* ¶ 16.  When Solinger went on vacation in 2010, she asked that Plaintiff approve several time sheets for payment of wages to Solinger's Administrative Assistant.  *Id.*  Plaintiff claims that she discovered that the assistant had actually not been at work on the days the assistant claimed to have worked.  *Id.*  When Plaintiff reported this information to Solinger and "raised an internal complaint about this wage payment issue," Solinger instructed Plaintiff to sign and approve the time sheets as she "forgot" that the assistant worked from home on those days.  *Id.*  When Plaintiff learned the assistant was not authorized to work from home, she refused to sign the time sheets.  *Id.*  Plaintiff alleges that Solinger was angry and began a campaign of retaliation against her.  *Id.*

Solinger subsequently conducted an audit of the Secret Shopper Program, taking the position that the program was no longer in existence, Plaintiff's daughter was not an authorized participant, and that Plaintiff had committed fraud by approving meal reimbursements for her daughter and another manager's daughter after the program ended.  *Id.* ¶ 17.

2

As Solinger failed to provide Plaintiff with a liberty-interest hearing prior to her fraud determination, Plaintiff requested a full investigation of the allegations. *Id.* ¶¶ 19, 20. Plaintiff alleges that Defendants conducted a biased investigation with a pre-determined outcome of termination. *Id.* ¶ 20. In particular, Plaintiff alleges that Defendant failed to interview the former Assistant Director, Brian Bigelow, and failed to consider emails between Plaintiff's daughter and Solinger, which showed that Solinger approved several of her meal reimbursements. *Id.*

On February 4, 2011, Solinger wrote a letter to Plaintiff informing her that she was moving forward with the process of termination as a result of misconduct due to financial fraud and violations of ethical values and standards at UCB. *Id.* ¶ 21. Solinger accused Plaintiff of depositing over $1,300.00 in her daughter's account "without notification and authorization to do so by senior dining management, or immediate supervisor." *Id.* Solinger informed Plaintiff that she would be given a pre-termination hearing prior to any termination decision. *Id.*

Plaintiff's hearing was held on February 10, 2011. *Id.* ¶ 22. Plaintiff alleges that the hearing was biased, with Defendants presenting no witnesses or exhibits and the hearing officer listening to Plaintiff for less than an hour before reaching the conclusion that she should be fired. *Id.* The hearing officer concluded, "I believe the Cal Dining management has acted in a reasonable and responsible manner and that there are reasonable grounds to justify the proposed termination." *Id.* The officer's recommendation was sent directly to Solinger for her review and determination about whether Plaintiff should be terminated. *Id.*

On February 18, 2011, Solinger upheld the hearing officer's recommendation and informed Plaintiff that she was terminated as a result of misconduct due to financial fraud. *Id.* ¶ 23.

On February 14, 2013, Plaintiff commenced an action the Superior Court of the State of California in the County of Alameda, case number RG13667447. Not. of Rem., Ex. A, Dkt. No. 1. Plaintiff alleged three causes of action: (1) the Regents violated the FLSA, 29 U.S.C. § 215, by retaliating against her as a result of Plaintiff's internal complaints pertaining to the payment of wages; (2) Solinger violated Plaintiff's due process rights under the Fourteenth Amendment and free speech rights under the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; and

(3) the Regents and Solinger violated the California Constitution with regard to Plaintiff's due process rights and retaliated against her for exercising protected speech and petition activities. *Id.* Defendants removed the case to this Court on March 22, 2013, Dkt. No. 1, and subsequently filed a Motion to Dismiss. Plaintiff responded by filing her First Amended Complaint on April 11, 2013, alleging the same three causes of action. Dkt. No. 11.

Defendants filed the present Motion to Dismiss on April 25, 2013. Dkt. No. 13. Defendants argue that Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6) because: (1) her complaint that the Regents paid an employee who worked from home, even though the employee was not authorized to do so, is not a protected activity under the FLSA; (2) Solinger has qualified immunity with respect to Plaintiff's § 1983 claim; (3) Plaintiff cannot allege facts sufficient to establish any Constitutional violation and, even if she could, the purported violations were not clearly established; and (4) Plaintiff's California Constitution claim is untenable because she failed to exhaust her internal administrative remedies. Mot. at 1.

Plaintiff filed her Opposition on May 10, 2013 (Dkt. No. 17), and Defendants filed their Reply on May 16, 2013 (Dkt. No. 18).

### III.  LEGAL STANDARD

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the court may also consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV. DISCUSSION

### A.   FLSA

In her FAC, Plaintiff alleges that the Regents violated the anti-retaliation provision of the FLSA when they took adverse employment action against her, including termination of employment, as a direct result of Plaintiff's internal complaints pertaining to the payment of wages. FAC at 7-8. Defendants argue that Plaintiff's first cause of action under the FLSA must be dismissed because she did not engage in a protected activity. Although Plaintiff alleges that she reported to Solinger that an Administrative Assistant had not been at work on the days she claimed to have worked, Defendants argue that she "fails to provide any specificity about the nature of or content of the purported 'internal complaint' she made, such that it is possible to even determine on the face of the complaint if she complained about rights protected under the FLSA." Mot. at 5. Defendants further argue that, even if she did file a complaint, it was not sufficient to put Solinger on notice that Plaintiff was asserting rights protected by the FLSA.

In response, Plaintiff argues that nothing about her internal complaint was vague – she

engaged in a protected activity when she refused to comply with an instruction from her manager. Opp. at 7. Plaintiff contends that a reasonable objective person would have understood that her refusal constituted a protest and refusal, which constitutes protected activity under the FLSA. *Id.* at 9.

The Fair Labor Standards Act of 1938 sets forth employment rules concerning minimum wages, maximum hours, and overtime pay. 29 U.S.C. § 201 *et seq*. The anti-retaliation provisions of the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). To establish retaliation, Plaintiff must prove that: (1) she engaged in a protected activity; (2) she suffered an adverse employment decision; and (3) there was a causal link between Plaintiff's activity and the adverse employment decision. *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002) *on reh'g en banc,* 345 F.3d 742 (9th Cir. 2003) (citation omitted).

In analyzing whether an employee's conduct falls within the statutory language, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met . . . by oral complaints, as well as by written ones." *Kasten v. Saint-Gobain Performance Plastics Corp.*, --- U.S. ---, 131 S. Ct. 1325, 1335 (2011). The FLSA must "not be interpreted or applied in a narrow, grudging manner." *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999) (citing *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). Section 215 was enacted to ensure that employees who lodge complaints could do so free of fear of economic retaliation. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292-93 (1960).

Here, accepting Plaintiff's allegations as true and construing them in the light most favorable to her, the Court finds that Plaintiff has stated a claim which is plausible on its face. First, Plaintiff's allegations establish a protected activity – she complained to her manager that signing a timesheet for hours a person had not worked was illegal, and she refused to sign the Administrative Assistant's

6

timesheet. FAC ¶ 16. The Court finds that this complaint is sufficiently clear for Solinger to have understood it as an assertion of Plaintiff's rights. *Kasten*, 131 S. Ct. at 1335. Second, it is undisputed that Plaintiff's termination is an adverse employment decision. As to the third element, Plaintiff alleges that Solinger conducted an audit and ultimately terminated Plaintiff based on her refusal to sign the timesheet. Thus, there is causal link between Plaintiff's activity and the adverse employment decision. While Plaintiff might not ultimately prevail on her FLSA claim, she has pled factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.

Defendants argue that dismissal is appropriate because it was actually Plaintiff that was requesting that Solinger violate the FLSA by not paying the employee for work performed. Mot. at 5. However, Plaintiff's FAC alleges that the employee had not been at work. FAC ¶ 16. Since these factual allegations must be taken as true and interpreted in the light most favorable to Plaintiff at this stage in the proceedings, Defendants' interpretation is not controlling. Accordingly, Defendants' Motion is DENIED as to Plaintiff's FLSA claim.

**B.   42 U.S.C. § 1983**

In her second cause of action, brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Solinger[1] violated the First and Fourteenth Amendments to the United States Constitution. FAC at 8-10. Plaintiff alleges that Solinger violated her due process rights under the Fourteenth Amendment by failing to provide her with an unbiased investigation and hearing. *Id.* ¶ 31. Plaintiff further alleges that Solinger violated her rights of free speech and to petition the government for redress under the First Amendment when she made complaints about misusing public funds. *Id.* ¶ 33.

---

[1] In her second cause of action, Plaintiff refers to "Defendants" as having violated her constitutional rights. FAC ¶¶ 31-35. However, under the Eleventh Amendment, the State of California and its official arms are immune from suit under 42 U.S.C. § 1983 in federal court. *Howlett v. Rose*, 496 U.S. 356, 365 (1990). UCB and the Regents have long been understood to be instrumentalities of the State of California for Eleventh Amendment purposes, *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982). Thus, the Regents are immune under the Eleventh Amendment from Plaintiff's § 1983 claim and the Court considers the second cause of action against Solinger in her individual capacity only.

In their Motion, Defendants argue that the claims against Solinger should be dismissed because she is entitled to qualified immunity. Mot. at 5. Specifically, Defendants argue that (1) Plaintiff has not alleged facts sufficient to establish a violation of a constitutional right; and (2) the alleged violations were not clearly established. *Id.* at 6-9. In response, Plaintiff argues that the FAC demonstrates that Solinger violated her constitutional rights when Plaintiff was provided with a biased pre-determination hearing, and when Defendants failed to provide any liberty interest hearing. Opp. at 10. Plaintiff argues that her due process rights were clearly established. *Id.* at 14.

### 1.  Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine grows out of the policy concern that few individuals would enter public service if they risked personal liability for their official decisions. *Harlow*, 457 U.S. at 814. The immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224, 229 (1991), and "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It is within the court's "sound discretion" to address these two prongs in any sequence it deems appropriate. *Pearson*, 555 U.S. at 236.

2. Fourteenth Amendment

In her FAC, Plaintiff alleges that she had a protected property interest in her continued employment, which could not be deprived without an unbiased investigation and post-termination hearing. FAC ¶ 31. Plaintiff also alleges that she had a constitutional liberty interest in clearing her name of any allegations of misconduct and fraud. *Id.* Plaintiff contends that Solinger violated these interests when Defendants provided her with a biased pre-termination hearing and failed to provide an unbiased post-termination hearing. *Id.* ¶ 32.

      *a.*      *Whether the alleged facts show conduct that violated a constitutional right*

To state a claim under the Fourteenth Amendment's Due Process Clause, the Court must first determine whether Plaintiff had a protected property interest in her continued employment and, second, whether she received "all the process that was due." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011) (citing *Clements v. Airport Auth. of Washoe Cnty.,* 69 F.3d 321, 331 (9th Cir. 1995)).

As to the first element, a public employee that has completed his or her probationary period has a property interest in continued employment. *Burrell v. City of Los Angeles*, 209 Cal. App. 3d 568, 575 (1989); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (public employees who may be dismissed only for cause possess a property interest in their continued employment). Here, there appears to be no dispute that Plaintiff was a permanent employee; thus, she satisfies the first element of a due process claim.

Next, the Court must determine whether Plaintiff did, in fact, receive due process. The Supreme Court has stated that due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). It is a flexible concept requiring accommodation of the competing interests involved, and its procedural requisites necessarily vary depending on the importance of the interests involved and the nature of the controversy. *Cleveland*, 470 U.S. at 542-43; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

At a minimum, an individual entitled to procedural due process should be accorded: written

notice of the grounds for the disciplinary measures; disclosure of the evidence supporting the disciplinary grounds; the right to present witnesses and to confront adverse witnesses; the right to be represented by counsel; a fair and impartial decisionmaker; and a written statement from the fact finder listing the evidence relied upon and the reasons for the determination made. *Goldberg v. Kelly*, 397 U.S. 254, 267-70 (1970); *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975).

Here, Plaintiff alleges that she was denied the opportunity for a hearing that was unbiased and fair. The right to a fair trial by a fair tribunal is a basic requirement of due process applying to administrative agencies which adjudicate, as well as to courts. *Withrow*, 421 U.S. at 46. The Due Process Clause is violated when the employee is given a perfunctory hearing in which the factfinder is biased and prejudiced. *Binkely v. City of Long Beach*, 16 Cal. App. 4th 1795, 1810 (1993); *Linney v. Turpen*, 42 Cal. App. 4th 763, 773 (1996). Plaintiff alleges that Defendants provided her with a biased hearing in which they presented no witnesses or exhibits, and the hearing officer was not impartial because he listened to Plaintiff's version of the events for less than an hour before concluding that Plaintiff should be fired. FAC ¶ 22. The failure to provide an impartial decisionmaker at the pretermination stage, of itself, does not create liability, so long as the decisionmaker at the post-termination hearing is impartial. *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991). Here, Plaintiff alleges that she received no post-termination hearing and that the hearing officer's recommendation was sent directly to Solinger, who sought to terminate Plaintiff in retaliation and was therefore also not impartial. FAC ¶¶ 16, 22. Taking these allegations as true at this stage in the proceedings, the Court finds that the facts alleged show that Solinger's conduct violated a constitutional right.

b.  *Whether the right was clearly established*

Next, the Court must determine whether the right was clearly established in light of the specific context of the case. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *al-Kidd*, 580 F.3d at 964 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted)).

10

In order to find that the law was clearly established, a court "need not find a prior case with identical, or even 'materially similar,' facts." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003) (quoting *Hope*, 536 U.S. at 730). Indeed, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. Rather, a court must "determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful." *Flores*, 324 F.3d at 1137 (internal quotations omitted) (noting that case law can render the law clearly established). Specifically, the Supreme Court has held:

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent."

*Hope*, 536 U.S. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see al-Kidd*, 580 F.3d at 971 (noting that "dicta, if sufficiently clear, can suffice to clearly establish a constitutional right.") (internal quotation omitted).

Here, while Defendants concede that the right to due process is clearly established, they seem to argue that it is not clear that an employee has the right to an unbiased review process. Mot. at 8-9. Defendants cite to no authority in support of this argument, and the Court is aware of none. Further, Defendants argue that Plaintiff fails to state why the hearing was biased, yet this seems to ignore the allegations in the FAC, in which she states that Solinger began a campaign of retaliation against her, Defendants presented no witnesses or exhibits at the hearing, the hearing officer listened to Plaintiff's version of the events for less than an hour before reaching the decision that she should be fired, and that Solinger made the ultimate determination to terminate her. FAC ¶¶ 16, 22. At the 12(b)(6) stage, it is not the Court's place to determine the truth of Plaintiff's allegations. Thus, based on the facts alleged, the Court finds that Plaintiff's right to an unbiased review process was sufficiently clear that Solinger would understand that a biased process would violate that right.

Based on this analysis, the Court finds that it is not clear at this stage in the proceedings that Solinger is entitled to qualified immunity. Accordingly, Defendants' Motion as to Plaintiff's

11

Fourteenth Amendment Due Process claim is DENIED.

### 3. First Amendment

In her FAC, Plaintiff alleges that Solinger violated her First Amendment rights to free speech and to petition the government for redress. Specifically, Plaintiff alleges that she made complaints of matters of public concern to Solinger, "namely, the complaints about misusing public funds to pay an Administrative Assistant for work that was not performed, which constitutes criminal fraud." FAC ¶ 33. Plaintiff further alleges that Defendants publicized the stigmatizing information, including the allegations of financial fraud, to persons outside the university management, including the local police department. *Id.* ¶ 24.

#### *a. Whether the alleged facts show conduct that violated a constitutional right*

"[A] State may not discharge a[ ] [public] employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). Whether particular speech qualifies for constitutional protections is a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7, 150 n.10 (1983). A two-step analysis determines whether federal courts will protect the speech at issue. The threshold question is whether it addresses matters of "public concern." *Id.* at 146. If it does, courts must balance the employee's "interest in making her statement against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rankin*, 483 U.S. at 388 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

##### *i. Whether the Speech Addresses a Matter of Public Concern*

Courts within the Ninth Circuit focus on two general aspects of speech that indicate whether a statement relates to a matter of public concern. First, the Court must consider the content of the speech. *Weeks v. Bayer*, 246 F.3d 1231, 1234 (9th Cir. 2001) (citing *Havekost v. U.S. Dep't of the Navy*, 925 F.2d 316, 318 (9th Cir. 1991)). "When the employee addresses issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," that speech falls squarely within the boundaries of public

concern. *Id.* (internal citations and quotations omitted).

Next, the Court must consider the form and context of the speech. *Connick*, 461 U.S. at 147. The Court must look to such factors as the public or private nature of the speech, *id.* at 148, and the speaker's motive, *Havekost*, 925 F.2d at 318.  "Public speech is more likely to serve the public values of the First Amendment." *Weeks v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001) (citation omitted). "Private speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Id.* (citing *Connick*, 461 U.S. at 148)).

"Public employees 'are positioned uniquely to contribute to the debate on matters of public concern' and, as such, they should be encouraged 'to speak out about what they think and know without fear of retribution, so that citizens may be informed about the instruments of self-governance.'" *Id.* (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 870 (9th Cir.)), *cert. denied*, 528 U.S. 1061 (1999).  "These matters of 'public concern' are at the heart of the First Amendment, for it is only when they are brought to light that we may achieve 'uninhibited, robust, and wide-open' debate about the shape and function of the government." *Id.* (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964)).

Here, Plaintiff alleges that she complained that Defendants misused public funds by paying the Administrative Assistant for work that was not performed. FAC ¶ 33.  Taking the allegations as true and construing them in Plaintiff's favor, the Court finds that this rises to the level of protected speech.  The Ninth Circuit has held that "misuse of public funds" is "a matter of inherent public concern." *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995); *see also Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405-06 (9th Cir. 1988) (plaintiff conveyed information about the wasteful misuse of public funds).  Plaintiff's case is also bolstered by the form and context of her speech. *Roth*, 856 F.2d at 1405 (noting that, specifically when the content of speech relates to "public monies," courts should look at the speech's context).  Plaintiff alleges that she initiated the complaint when she spoke to Solinger about the matter and further raised the issue in her pre-termination hearing. *See Weeks*, 246 F.3d at 1236 (finding interoffice communication regarding program funding was not protected in part because plaintiff failed to initiate the conversation and

failed to raise the matter with a supervisor, which would have shown the plaintiff "urging reform of a wayward policy in a manner that might suggest public-mindedness"). Accordingly, the Court finds that Plaintiff has pled factual content that allows the Court to draw the reasonable inference that her speech addresses a matter of public concern.

### ii. *Balancing Interests*

Next, the Court must balance Plaintiff's interest in making her statement against Defendants' interest in promoting the efficiency of the public services it performs through its employees. Plaintiff's discharge could still survive First Amendment scrutiny if Defendants show that Plaintiff's speech "so severely damaged office harmony and working relationships that the government's interest in promoting an effective workplace outweighs [her] First Amendment rights." *Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir. 1992) (citing *Rankin,* 483 U.S. at 388)). "Application of this balancing test entails a factual inquiry into such matters as whether the speech (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs the routine operation of the office." *Id.* (citations omitted). The "manner, time, and place" in which the speech occurred also constitute relevant considerations. *Id.* (quoting *Connick*, 461 U.S. at 152, 103 S.Ct. at 1693.

Here, limiting the analysis to the allegations in Plaintiff's FAC, it is not clear whether Defendants' interests outweigh Plaintiff's rights. The Court finds that such a balancing test is more appropriate at the summary judgment or trial stage, where the Court or jury has all the evidence before it. Accordingly, at this stage in the proceedings, the Court cannot say that Defendants' interests outweigh Plaintiff's rights. Thus, taken in the light most favorable to Plaintiff, the Court finds that Solinger's conduct violated Plaintiff's First Amendment rights.

### b. *Whether the right was clearly established*

Next, the Court must determine whether the right was clearly established in light of the specific context of the case. Plaintiff alleges that she "made complaints of matters of public concern to Defendant Solinger; namely, the complaints about misusing public funds to pay an Administrative

Assistant for work that was not performed, which constitutes criminal fraud." FAC ¶ 33. Even though Plaintiff's complaint about the Administrative Assistant's timesheet is related to her job duties, speech made pursuant to an employment duty can be a matter of public concern. *See, e.g., Roth*, 856 F.2d at 1406; *Pool v. VanRheen*, 297 F.3d 899, 908 (9th Cir. 2002). Further, "there is a series of cases in the Ninth Circuit establishing that the public's interest in learning about illegal conduct by public officials and other matters at the core of the First Amendment protection outweighs a [public] employer's interest in avoiding a mere potential disturbance to the workplace." *Keyser v. Sacramento City Unified School Dist.,* 265 F.3d 741, 748 (2001) (citing *Gilbrook*, 177 F.3d at 867-70; *Roth*, 856 F.2d at 1403-08; *Johnson*, 48 F.3d at 425-28). Thus, any argument that the law in this respect was not clearly established is without merit.

Based on this analysis, the Court finds that it is not clear at this stage in the proceedings that Solinger is entitled to qualified immunity. Accordingly, Defendants' Motion as to Plaintiff's First Amendment claim is DENIED.

**C.     California Constitution**

In her third cause of action, Plaintiff alleges that Defendants violated Article I, §§ 2 and 7 of the California Constitution with regard to Plaintiff's due process rights and for retaliating against her for exercising protected speech and petition activities.[2] FAC at 10. Defendants argue that Plaintiff's claim should be dismissed because Plaintiff failed to exhaust her administrative remedies, namely, the internal grievance procedures outlined in the Personnel Policies for Staff Members[3] ("PPSM"),

---

[2] The Regents is a constitutionally created agency (Cal. Const., art. IX, § 9), deriving therefrom quasi-adjudicatory powers over personnel matters involving university employees. *Mendoza v. Regents of Univ. of Ca.*, 78 Cal. App. 3d 168, 177 (1978).

[3] Defendants filed the PPSM along with a Request for Judicial Notice of the document. Dkt. No. 15. The Court may take notice of the PPSM on the basis that it is a record of an administrative body. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (holding that courts may also take judicial notice of the "records and reports of administrative bodies"); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) (holding that the Regents is an "arm of the state"); *Ishimatsu v. Regents of the Univ. of Cal.*, 266 Cal. App. 2d 854, 864 (1968) (holding that "[T]he University is a statewide administrative agency"); *Dao v. Univ. of California*, 2004 WL 1824129, at *4 (N.D. Cal. Aug. 13, 2004) (taking judicial notice of PPSM 70 as a record of an administrative

Policy No. 70. Mot. at 9-11; Harrington Decl., Ex. 1, Dkt. No. 14. In response, Plaintiff argues that PPSM 70 does not apply to managers and, even if it did apply, any further exhaustion requirements beyond the post-termination hearing would have been futile because Defendants insisted that she waive all of her legal claims. Opp. at 15.

Generally, the rule of exhaustion precludes judicial intervention until a plaintiff exhausts all administrative remedies.[4] *Roth v. City of Los Angeles*, 53 Cal. App. 3d 679, 688 (1975). The California Supreme Court has ruled that this doctrine requires plaintiffs to exhaust internal grievance procedures, *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal.3d 465, 485 (1976), including any internal appeals mechanism, *Edgren v. Regents of the Univ. of Cal.*, 158 Cal. App. 3d 515, 523 (1984). This requirement serves a three-fold purpose: first, it allows an organization to minimize or eliminate damages by giving it an opportunity to quickly determine if it has committed an error and remedy the problems; second, courts accord recognition to the "expertise" of the organization's quasi-judicial tribunal, and third, even if resort to the courts is ultimately necessary, the internal procedures "promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." *Westlake*, 17 Cal.3d at 476.

California courts have held that the exhaustion doctrine applies to direct constitutional actions such as those asserted by Plaintiff here. *See, e.g., Tiernan v. Trs. of the Cal. State Univ. and Colls.*, 33 Cal.3d 211, 217 (1982) (holding that a temporary employee's failure to exhaust her administrative remedies barred her judicial claim that the university had violated her First Amendment rights when it failed to reappoint her as an archivist); *Griswold v. Mt. Diablo Unified Sch. Dist.*, 63 Cal. App. 3d 648, 652-53 (1978) (holding that a teacher's claim that his First Amendment rights were violated

---

body). The Court notes in addition that Plaintiff does not object to Defendants' request for judicial notice of the PPSM or challenge its authenticity. Accordingly, the Court GRANTS Defendants' request and takes judicial notice of the PPSM.

[4]The Court applies California law to Plaintiff's state law claims, which are before the Court under pendent jurisdiction. *See Hillery v. Rushen*, 720 F.2d 1132, 1138 (9th Cir. 1983) ("Federal courts exercising pendent jurisdiction over state law claims must apply state law as the state's highest court would") (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

16

when he was discharged from position as chairman of English department was barred because he failed to exhaust his administrative remedies).

Here, Plaintiff alleges that she exhausted all administrative remedies. FAC ¶ 8. In reviewing the PPSM submitted by Defendants, it is not clear that she is required to exhaust any remedies under the policy. Pursuant to PPSM 70C, eligibility to have a complaint reviewed under the policy is limited to "[a]ll staff employees, except Managers and Senior Professionals appointed to salary grades VIII and IX, Senior Managers, employees who voluntarily terminate employment or retire from the University, and employees appointed in per diem positions." Harrington Decl., Ex. 1. Plaintiff alleges that she worked as a General Manager, which would appear to exclude her from the requirements of PPSM 70. FAC ¶ 11. Although PPSM provides that "a Manager or Senior Professional employee in a career position *may* submit alleged violations . . . for review," it is not clear that this is a requirement. Harrington Decl., Ex. 1. This determination is more properly made at the summary judgment or trial phase.

Further, even if Plaintiff were required to file a written grievance under PPSM 70, the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable or inadequate. *Tiernan*, 33 Cal.3d at 217. Thus, even where there is an administrative remedy to exhaust, the exhaustion requirement is excused where its pursuit would be futile, idle or useless. *Jacobs v. State Bd. of Optometry*, 81 Cal. App. 3d 1022, 1030 (1978). This futility exception is very narrow and will not apply unless a plaintiff can positively state that the administrative agency has declared what its ruling will be in a particular case. *Sea & Sage Audubon Society, Inc. v. Planning Com.*, 34 Cal.3d 412, 418 (1983). Plaintiff alleges that, after her termination became effective, she contacted the Regents in an attempt to obtain a post-termination hearing, but the Regents informed her that there was nothing more that they could do for her, unless she was willing to give up her employment voluntarily, or resign in lieu of termination, and waive any claims against the Regents. FAC ¶ 8. Since these factual allegations must be taken as true and interpreted in the light most favorable to Plaintiff, the Court finds that, even if Plaintiff were required to file a grievance under PPSM 70, it would have been futile for her to continue with such a process, given

that the Regents informed her there was nothing more they could do unless she waived all claims against the Regents.

Accordingly, Defendants' Motion is DENIED as to Plaintiff's claims under the California Constitution.

## V.  CONCLUSION

Based on the analysis above, Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: May 22, 2013

Maria-Elena James
United States Magistrate Judge